**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

JASON F. CHILDS

      Debtor.

_____/

Case No. 25-40786-prh
Chapter 7
Hon. Paul R. Hage

BRIAN REAVER, JR. and
BRIAN RICHARD REAVER

      Plaintiffs

v.

JASON F. CHILDS

      Defendant / Third Party Plaintiff

v.

JOSHUA CASTMORE and
VANGUARD TITLE INSURANCE AGENCY, LLC

      Third Party Defendants.

_____/

Adv. Proc. No. 25-04086

**OPINION ON THIRD PARTY DEFENDANT**
**JOSHUA CASTMORE'S MOTION TO DISMISS**

## I.    Introduction

This matter is before the Court upon the *Motion to Dismiss Third-Party Complaint* [Doc. No. 30] (the "Motion") filed by third-party defendant Joshua Castmore ("Castmore").  By the Motion, Castmore asks this Court to dismiss Count

1

III of *Defendant's Third-Party Complaint* [Doc. No. 17] (the "Third Party Complaint") filed by defendant/third party plaintiff Jason F. Childs ("Childs"). This Count, a legal malpractice claim, is premised upon alleged malpractice Castmore committed in his representation of Childs and Childs's business in pre-petition state court litigation commenced by plaintiffs Brian Reaver, Jr. and Brian Richard Reaver (collectively the "Reavers"). Castmore argues that Count III is subject to dismissal pursuant to Rule 12(b)(1), Rule 12(b)(6) and Rule 17(a) of the Federal Rules of Civil Procedure, which are made applicable in this adversary proceeding pursuant to Rule 7012 and Rule 7017 of the Federal Rules of Bankruptcy Procedure.[1]

Dismissal of Count III of the Third Party Complaint is appropriate for at least two reasons. First, impleader of the legal malpractice claim is improper under Civil Rule 14. Second, dismissal is proper because Childs is not the real party in interest and does not have the ability to bring such claim.

## II.    Factual Background

The parties' respective filings establish that, at all times relevant to this case, Childs was the sole member of Nottingham Homes, LLC ("Nottingham"). On September 29, 2022, Nottingham acquired fee simple title to property located at 651

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. § 101 *et seq.* Specific chapters of the Bankruptcy Code are identified herein as "chapter __" and specific sections of the Bankruptcy Code are identified herein as "section __." Similarly, specific rules of the Federal Rules of Bankruptcy Procedure are identified herein as "Bankruptcy Rule __" and specific rules of the Federal Rules of Civil Procedure are identified herein as "Civil Rule __."

N. Cass Lake Rd., Waterford, Michigan (the "Property"). A year later, on September 27, 2023, Nottingham entered into an agreement to sell the Property to the Reavers. Pursuant to their agreement, Nottingham provided the Reavers with a title insurance commitment from Vanguard Title Insurance Agency, LLC (the "Commitment").

The closing on the sale of the Property took place on October 26, 2023. Childs signed a *Warranty Deed* on behalf of Nottingham conveying fee simple title to the Reavers at closing. Childs also signed an *Affidavit by Owner* on behalf of Nottingham disclaiming any knowledge of matters impacting title, including mortgages, beyond what was in the Commitment. The Reavers allege that Childs knew of, and failed to disclose, a mortgage held by Civic Financial Services, LLC dated September 16, 2022. The Reavers further allege that they only later became aware of this mortgage after receiving a foreclosure notice with respect to the Property. A foreclosure sale of the Property was held on March 19, 2024, and Banc of California successfully credit bid for the Property. The Reavers subsequently redeemed the Property.

On June 11, 2024, the Reavers filed suit against Childs and Nottingham in the Oakland County Circuit Court [Case No. 2024-207929-CK] (the "State Court Action"). The State Court Action alleged fraud, innocent misrepresentation and unjust enrichment claims against Childs. Castmore appeared as counsel for Childs and Nottingham in the State Court Action. The state court ordered the parties to

attend facilitative mediation. After Childs failed to attend the mediation, the Reavers moved for a default judgment in the State Court Action on December 11, 2024. On December 19, 2024, the state court entered a *Default Judgment* against Childs and Nottingham pursuant to MCR 2.410(D)(3)(a) and MCR 2.603 in the amount of $189,158.33.[2]

Childs commenced this bankruptcy case on January 29, 2025. Although originally filed as a chapter 13 case, the case was converted to a case under chapter 7 on February 25, 2025. On May 9, 2025, the Reavers commenced this adversary proceeding by filing a *Complaint For Nondischargeability of Debt* [Doc. No. 1] against Childs seeking a determination that the debt owed by Childs to the Reavers is non-dischargeable pursuant to section 523(a)(2)(A) as a debt obtained by "false pretenses, a false representation, or actual fraud." Childs filed an *Answer to Complaint for Nondischargeablity of Debt Under 11 USC § 523(a)(2)(A) and Affirmative Defenses* [Doc. No. 8] on June 20, 2025.

On September 3, 2025, Childs filed the Third Party Complaint asserting claims against Fidelity National Title Insurance Company ("Fidelity"), Vanguard Title Insurance Agency, LLC ("Vanguard") and Castmore. More specifically, the

---

[2]  MCR 2.410(D)(3) provides that "Failure of a party or the party's attorney or other representative to attend a scheduled ADR proceeding, as directed by the court, may constitute a default to which MCR 2.603 is applicable…." MCR 2.603 sets forth the state court procedures governing the entry of a default and requests for entry of a default judgment.

4

Third Party Complaint alleges: (i) a negligence claim against Fidelity and Vanguard (Count I), (ii) a negligent performance of a contract claim against Vanguard (Count II), and (iii) a legal malpractice claim against Castmore (Count III).[3]  This Opinion deals solely with Count III, which alleges that Castmore committed legal malpractice in the State Court Action by failing to inform Childs that he was required to attend court-ordered mediation with the Reavers.

On November 10, 2025, Castmore filed the Motion.  Childs filed a *Response to Third-Party Defendant Joshua Castmore's Motion to Dismiss Third-Party Complaint and Brief in Support* [Doc. No. 51] on December 8, 2025.  Castmore filed a reply brief [Doc. No. 65] on January 27, 2026.  The Court held a hearing on the Motion on February 23, 2026.

## III.  <u>Analysis</u>

The Third Party Complaint is premised on Civil Rule 14(a)(1), made applicable here by Bankruptcy Rule 7014.  Under that rule, a defendant to any civil action in the federal courts may implead a party "who is or may be liable" to the defendant "for all or part of the claim against" the defendant.  Fed. R. Civ. P. 14(a)(1). Notwithstanding Civil Rule 14, a third party claim can be heard in federal court only

---

[3] The claims against Fidelity were dismissed pursuant to the *Order Granting Third-Party Defendant Fidelity National Title Insurance Company's Motion to Dismiss Third-Party Complaint* [Doc. No. 54] that was entered by the Court on December 10, 2025.

if it falls within the court's subject-matter jurisdiction. *See* 10 COLLIER ON BANKRUPTCY ¶ 7014.02 (Richard Levin & Henry J. Sommer eds., 16th ed.).

Permission to prosecute a third-party action is a matter committed to this Court's discretion. *See, e.g., General Elec. Co. v. Irvin*, 274 F.2d 175 (6th Cir. 1960); *see also* C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1443 (2025) ("whether a third-party defendant may be impleaded under Rule 14 continues to be a question addressed to the sound discretion of the trial court"). "The discretionary power of the court is not circumvented in cases wherein the third-party complaint may be served without leave of the court, pursuant to the provisions of Fed. R. Civ. P. 14(a)." *In re Chem. Separations Corp.,* 36 B.R. 138 (Bankr. E.D. Tenn. 1983);

Castmore seeks dismissal of Count III of the Third Party Complaint under Civil Rule 12(b)(1) and (6). Civil Rule 12(b) provides that a litigant may seek dismissal of a claim by motion for, among other reasons: "(1) lack of subject-matter jurisdiction; … [and] (6) failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b).

Civil Rule 12(b)(1) provides that lack of subject matter jurisdiction is a basis to dismiss a claim, and Civil Rule 12(h)(3) requires dismissal "if the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

6

A motion under Civil Rule 12(b)(6) tests the legal sufficiency of a claim. To survive a motion to dismiss under Civil Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).

Castmore also relies on Civil Rule 17(a) which provides, in pertinent part: "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).

For the reasons detailed below, dismissal of Count III of the Third Party Complaint is appropriate.

### a. Impleader of the legal malpractice claim is improper under Civil Rule 14

As noted, Civil Rule 14, which governs third-party practice, allows a third party complaint to be served upon "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The purpose of Civil Rule 14 is to "permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and

liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008).[4] Notwithstanding the foregoing, the Sixth Circuit Court of Appeals has cautioned that:

> Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the essential criterion of a third-party claim. Correlatively, a defendant's claim against a third-party defendant cannot simply be an independent or related claim, but must be based upon the original plaintiff's claim against the defendant.

*Id.* at 805. Third party claims are typically claims in the nature of contribution, indemnity, and subrogation. *See Farm Credit Services of Mid America PCA v. Swain (In re Swain)*, 2010 WL 2812727 (Bankr. N.D. Ohio July 15, 2010).

Regarding section 523(a) actions such as this, courts have noted that where a bankruptcy court "exercises its limited and specialized subject matter jurisdiction to hear and determine an objection to the dischargeability of a debt," it may be inappropriate to use impleader to combine varied controversies simply because they have a set of facts in common. *See Gulf Insurance Group v. Narumanchi (In re Narumanchi)*, 221 B.R. 311, 316 (Bankr. D. Conn. 1998). Indeed, several courts

---

[4] Childs asserted at oral argument on the Motion that Civil Rule 14 is so broad that it can be used to implead any party associated with any of his defenses to the underlying non-dischargeability action. When the Court asked Childs's counsel for legal authority to support this position, he could not provide any.

have questioned whether it is ever appropriate to permit impleader of a third party in a non-dischargeability action under section 523(a) given the declaratory nature of the relief sought in such actions. *See, e.g., Boucher v. McCarter (In re McCarter)*, 289 B.R. 759, 763 (Bankr. D. N.M. 2002) ("When the adversary proceeding is limited to the issue of dischargeability, a third-party defendant could not be held liable to plaintiffs for a defendant's actions"); *In re Narumanchi,* 221 B.R. at 315 n. 9 ("Indeed the Court questions whether an entity could ever be secondarily liable to a bankruptcy debtor in connection with a determination of the dischargeability of debt, given that pure dischargeability actions are declaratory in nature."); *Nextier Bank, N.A. v. Pompa (In re Pompa)*, 2013 WL 2286080 at *3-4 (Bankr. W.D. Pa. May 23, 2013) (third-party complaint was improper where adversary proceeding sought the "narrow and limited relief of a finding of nondischageability concerning the debt" owed by the debtor).

The Court believes that for impleader to be appropriate in a dischargeability action, "[t]here must be a nexus of liability between the [defendant's] third-party claims and [plaintiff's] *dischargeability* claim—not its *monetary* claim." *In re Narumanchi*, 221 B.R. at 315. No such nexus exists in this case. As detailed above, the Reavers brought a non-dischargeability action against Childs pursuant to section 523(a)(2)(A) seeking a determination that the debt owed to them was obtained by "false pretenses, a false representation, or actual fraud." The alleged fraudulent

conduct here did not involve Castmore in any way. Rather, the alleged fraudulent conduct occurred in October 2023 when Childs allegedly failed to disclose the existence of a known mortgage causing the Property to be conveyed to the Reavers. Conversely, the facts supporting Childs's legal malpractice claim against Castmore did not occur until late 2024, after the commencement of the State Court Action, when Castmore allegedly did not inform Childs that he was required to attend court-ordered mediation.

Castmore's advice to Childs with respect to his attendance at the court-ordered mediation in the State Court Action may or may not constitute legal malpractice.[5] Such claim, however, is independent of a determination of whether the debt owed by Childs to the Reavers was incurred through "false pretenses, a false representation, or actual fraud," as is required for such debt to be deemed non-dischargeable under section 523(a)(2)(A). As such, impleader of the legal malpractice claim under Civil Rule 14(a)(1) is improper. Because Childs fails to state a plausible claim upon which relief can be granted, dismissal of Count III is appropriate under Civil Rule 12(b)(6).

### b. Childs does not have the ability to bring the legal malpractice claim

---

[5] Because the Court is dismissing Count III, it need not address the merits of the asserted legal malpractice claim, including Castmore's arguments regarding a lack of proximate cause. For the avoidance of doubt, nothing herein should be construed as an opinion regarding the merits of any legal malpractice claim that any party may assert against Castmore.

Even if Castmore was an appropriate third party defendant under Civil Rule 14, Childs does not have the ability to bring the legal malpractice claim against Castmore under applicable bankruptcy law. Rather, because the claim has not been abandoned under section 554, it is property of the bankruptcy estate and can only be pursued by the chapter 7 trustee appointed in this case. This constitutes an additional basis for dismissal of Count III of the Third Party Complaint.

At the outset, the Court notes that there appears to be some disagreement in the caselaw regarding the applicable Civil Rule with respect to a motion to dismiss where, as here, a plaintiff does not have the ability to bring such claim. Castmore asks the Court to dismiss the legal malpractice claim under Civil Rule 12(b)(1), asserting that Childs does not have prudential standing to bring such claim and reasoning that standing is required for federal subject-matter jurisdiction. Federal courts frequently dismiss claims for a lack of standing under Civil Rule 12(b)(1). *See, e.g.*, *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("We review *de novo* a district court's dismissal of a case for lack of standing—lack of subject matter jurisdiction—under Fed. R. Civ. P. 12(b)(1)."); *Allstate Ins. Co. v. Global Medical Billing, Inc.,* 520 Fed. Appx. 409, 410-11 (6th Cir. 2013) ("the issue of standing … is more properly considered an attack on the court's subject-matter jurisdiction under Rule 12(b)(1)."); *Sweet v. Duggan (In re Wyman)*, 2020 WL 5791599 at *1 (Bankr. E.D. Mich. Sept. 28, 2020) ("Because standing is

jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)").

Other courts faced with similar fact patterns have analyzed this issue under Civil Rule 17(a)(1), which provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). For example, in *Barefield v. Hanover Ins. Co.*, 521 B.R. 805, 808 (E.D. Mich. 2014), the court concluded that "standing" arguments like that raised by Castmore are more properly characterized as real party in interest arguments under Civil Rule 17, stating:

> Defendant argues that Plaintiff lacks standing to bring his claims because the claims do not belong to him. Rather, they belong to the bankruptcy trustee. Defendant frames this as a standing issue, but it is actually a question of whether Plaintiff is the real party in interest under Federal Rule of Civil Procedure 17. Despite this slight mischaracterization, Defendant is correct that Plaintiff does not have the ability to bring these claims because he is not the real party in interest.

*Id.* at 808 (citing *Kimberlin v. Dollar Gen. Corp.*, 520 Fed. Appx. 312, 314 (6th Cir.2013)). In this case, as in *Barefield*, regardless of which approach is adopted, the outcome is the same. Count III of the Third Party Complaint must be dismissed because Childs is unable to prosecute such claim.

When a debtor files a bankruptcy petition, the bankruptcy estate becomes the owner of all the debtor's property as of the commencement of the case. *See* 11 U.S.C. § 541(a)(1) (property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case"). This includes all of

12

the debtor's potential causes of action that accrued prior to the debtor's bankruptcy petition. *See Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012).

As alleged in the Third Party Complaint, Childs's legal malpractice claim against Castmore accrued in late 2024—prior to his bankruptcy filing. It was listed as a contingent and unliquidated pre-petition claim in the bankruptcy schedules [Doc. No. 22] that Childs filed early in the case. As a pre-petition asset, the legal malpractice claim constitutes property of Childs's chapter 7 bankruptcy estate. 11 U.S.C. § 541(a)(1).

Because the cause of action belongs to the bankruptcy estate, it is the chapter 7 trustee and not the debtor who is responsible for the claim, and the debtor "has no standing to pursue such cause of action." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988). As stated by the *Barefield* court:

> It is well-settled that the right to pursue causes of action formerly belonging to the debtor … vests in the trustee for the benefit of the estate. It is the trustee who "has the capacity to sue or be sued," and, absent abandonment by the trustee, the "debtor has no standing to pursue such causes of action."

*Barefield*, 521 B.R. at 809 (internal citations omitted). Put another way, "unless and until the Chapter 7 Trustee abandons these claims under 11 U.S.C. § 554, or the claims otherwise are no longer property of the bankruptcy estate, only the Chapter 7 Trustee has standing and authority to pursue these claims." *Ukrainian Future Credit Union v. Garak* (*In re Garak*), 569 B.R. 684, 685 (Bankr. E.D. Mich. 2017) (citing

*Auday*, 698 F.3d at 905); *see also In re Stinson,* 221 B.R. 726, 729, 731 & n. 3 (Bankr. E.D. Mich. 1998).

Abandonment is governed by section 554, which provides the following:

(a)  After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b)  On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c)  Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d)  Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554.

Section 554 provides for two types of abandonment.  Subsections (a) and (b) provide for what is commonly referred to as specific or intentional abandonment. Pursuant to section 554(a), the trustee or debtor in possession may provide notice of an intent to abandon property if that property "is burdensome to the estate" or "of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  Section 554(b) allows for a "party in interest" to move for an order directing the trustee to abandon property for the same reasons as stated in section 554(a).  Before property may be

abandoned under either of these subsections, notice of the intent to abandon must be given to the "United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code." Fed. R. Bankr. P. 6007(a). "The requirements of notice, a hearing and court approval assure that the creditors ... are given an opportunity to object to the return of any property to the bankrupt." *In re DeGroot*, 484 B.R. 311, 319 (B.A.P. 6th Cir. 2012) (citing *Bittel v. Yamato Int'l Corp.*, 70 F.3d 1271, 1995 WL 699672 at *4 (6th Cir.1995)).

Section 554(c) provides for the second type of abandonment which is often referred to as "abandonment by operation of law" or "technical abandonment." *See LPP Mortg., Ltd. v. Brinley*, 547 F.3d 643, 648 n. 3 (6th Cir. 2008); *In re Reiman*, 431 B.R. 901, 908 (Bankr. E.D. Mich. 2010). Pursuant to this subsection, property which the debtor schedules and which the trustee has not administered is abandoned to the debtor at the closing of the case "[u]nless the court orders otherwise." *See Stark v. Moran (In re Moran)*, 566 F.3d 676, 679 (6th Cir. 2009). Unlike abandonment under section 554(a) and (b), which requires some "initiative" by the trustee or a party in interest, abandonment under section 554(c) "occur[s] automatically upon the closing of the bankruptcy case." *In re DeGroot*, 484 B.R. at 319 (citing *Olson v. Aegis Mortg. Corp. (In re Bloxsom)*, 389 B.R. 52, 59 (Bankr. W.D. Mich. 2008)).

In this case, none of the abandonment procedures set forth in section 554 have occurred. There has been no request by the chapter 7 trustee under section 554(a) to abandon any property of the estate as being burdensome or of inconsequential value. Nor has any party in interest requested abandonment of the legal malpractice claim under section 554(b).[6] Because there has been no notice, no hearing and no court approval, a specific or intentional abandonment has not occurred. Finally, because Childs's chapter 7 bankruptcy case has not been closed, no abandonment of the legal malpractice claim has occurred under section 554(c).

Childs asks the Court to treat the *Chapter 7 Trustee's Report of No Distribution*, issued on August 5, 2025, as a *de facto* abandonment of estate property.[7] Bankruptcy courts almost uniformly agree, however, that a trustee report

---

[6] Castmore correctly notes that Childs could have sought entry of an order by the Court, after notice and a hearing, directing the chapter 7 trustee to abandon the legal malpractice claim under section 554(b). He has not done so.

[7] The *Chapter 7 Trustee's Report of No Distribution* states as follows:

Chapter 7 Trustee's Report of No Distribution: I, K. Jin Lim, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 5 months. Assets Abandoned without deducting any secured claims: $ 490869.78, Assets Exempt: $ 71295.41, Claims Scheduled: $ 1818223.54, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment without deducting the value of collateral or debts excepted from discharge: $ 1818223.54.

of no distribution is not an abandonment but, rather, merely evidences an intent to abandon property upon satisfaction of one of the conditions set forth in section 554. *See, e.g.*, *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1331 (9th Cir. 1991) ("Although filing a 'No Asset' report may exhibit the requisite intent to abandon an asset, that report in and of itself cannot result in abandonment unless the court closes the case."); *McGowan v. Dell Computer Corp.*, 2007 WL 2327063 at \*4 (M.D. Tenn. Aug. 10, 2007) (same); *Rooks v. St. Matthew's Univ., Inc. (In re Rooks)*, 642 B.R. 68, 72 (Bankr. N.D. Fla. 2022) ("Although the Chapter 7 Trustee has filed a no-asset report, that report does not in and of itself constitute abandonment by operation of law until Plaintiff's bankruptcy case is closed."); *In re Mejia*, 576 B.R. 464, 469 (Bankr. S.D.N.Y. 2017) ("The Chapter 7 Trustee's report of no distribution does not give rise to abandonment of the Property. The Property can only be abandoned in the manner provided by section 554."); *In re Owen*, 519 B.R. 869, 877-78 (Bankr. N.D. Ala. 2014) (noting that trustee's report of no distribution is "insufficient to accomplish abandonment of estate property, which can be effectuated solely in the manner specified in section 554").

If Congress had wanted to treat a trustee report of no distribution as a dispositive legal event with respect to abandonment, it could easily have said that in section 554. It did not do so; and this Court is not permitted to rewrite the statute. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts should decline to read words

into the statute that are not there). Rather, it is the role of the judiciary to interpret and apply the laws as enacted. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13-14 (2000) ("[C]ourts do not sit to assess the relative merits of different approaches to various bankruptcy problems. Achieving a better policy outcome … is a task for Congress, not the courts."). Thus, the Court declines to treat the trustee report of no distribution as a *de facto* abandonment.

Section 554(d) clarifies that, because the legal malpractice claim has not been administered or abandoned "under this section," the claim remains property of the estate. *See* 11 U.S.C. § 554(d). Based on the plain language of the Bankruptcy Code, the legal malpractice claim has not been abandoned at this time. As such, it remains property of the estate and Childs is not the real party in interest to bring such claim.

It is worth noting that even if the legal malpractice claim was deemed abandoned, as Childs argues, the Court would have to dismiss such claim for lack of subject matter jurisdiction. Bankruptcy courts are courts of limited jurisdiction; they have subject matter jurisdiction only over civil proceedings: (i) arising under title 11, (ii) arising in a case under title 11, and (iii) related to a case under title 11. *See* 28 U.S.C. §§ 1334(b). "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and 'arising in' proceedings are those that, by their very nature, could arise only

in bankruptcy cases." *Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 26 (Bankr. E.D. Mich. 2009). Childs's legal malpractice claim against Castmore does not fit into either of these categories.

Thus, for this Court to have subject matter jurisdiction over the claim once abandoned, jurisdiction would have to be established on a "related to" basis. The Sixth Circuit Court of Appeals has stated:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*…. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.,* 930 F.2d 1132, 1142 (6th Cir. 1991) (quoting *Pacor, Inc. v. Higgins (In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original).

Here, if the Court were to determine that the legal malpractice claim was, as Childs argues, abandoned then prosecution of such claim would have no conceivable effect on the estate being administered in bankruptcy. A successful resolution of the legal malpractice claim might benefit Childs, but it would not impact the distribution to his creditors. It would not alter the estate's rights, liabilities, options, or freedom

of action either positively or negatively. Thus, once abandoned, the Court would no longer have subject matter jurisdiction over such claim.[8]

In summary, because the legal malpractice claim remains property of the estate, Childs does not have the ability to pursue it. He is not the real party in interest. *See Barefield*, 521 B.R. at 808. Civil Rule 17(a)(3) contemplates that when a plaintiff is not the real party in interest, a court may allow the appropriate party to substitute into the action or it may dismiss the action. *Id.* at 810-11. Given the other deficiencies with respect to Count III of the Third Party Complaint detailed herein, the Court concludes that dismissal of the legal malpractice claim is the appropriate remedy.[9] Although the chapter 7 trustee has already indicated that she does not intend to pursue the legal malpractice claim for the benefit of creditors, it does not appear that any statute of limitations would bar her from pursuing such claim separately, if she desired to do so. *See* 11 U.S.C. § 108(a).

### IV. Conclusion

---

[8] The law is clear that, even in the context of Civil Rule 14, a bankruptcy court may only decide a third-party claim if such claim falls within the court's subject matter jurisdiction. *See, e.g.*, *In re Bruemmer Dev., LLC*, 515 B.R. 551, 556 (Bankr. E.D. Mich. 2014) (dismissing third party claims where the court lacked subject matter jurisdiction as the state law claims had "no conceivable effect on the estate being administered in this Chapter 7 bankruptcy case."); *In re McCarter*, 289 B.R. at 762 ("Rule 7014 is strictly procedural; it does not confer jurisdiction").

[9] Recognizing that the case law is somewhat inconsistent regarding whether dismissal under these circumstances is more appropriate under Civil Rule 17(a)(3) or Civil Rule 12(b)(1), Castmore argues that dismissal is warranted under both rules. The Court agrees. To the extent that Rule 12(b)(1) is applicable, then the outcome is the same. Count III must be dismissed because Childs lacks standing to bring such claim.

For the reasons stated herein, the Court grants the Motion and will dismiss Count III of the Third Party Complaint. The Court will enter a separate order consistent with this opinion.

**Signed on February 24, 2026**



/s/ **Paul R. Hage**

**Paul R. Hage**
**United States Bankruptcy Judge**