## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Case No. 25-40786-prh

JASON F. CHILDS

Chapter 7

Hon. Paul R. Hage

Debtor.

_____/

BRIAN REAVER, JR. and
BRIAN RICHARD REAVER

Plaintiffs

Adv. Proc. No. 25-04086

v.

JASON F. CHILDS

Defendant / Third-Party Plaintiff

v.

JOSHUA CASTMORE and
VANGUARD TITLE INSURANCE AGENCY, LLC,

Third-Party Defendants.

_____/

## OPINION ON THIRD-PARTY DEFENDANT VANGUARD TITLE INSURANCE AGENCY, LLC'S MOTION TO DISMISS

### I.  Introduction

This matter is before the Court upon *Third-Party Defendant Vanguard Title*

*Insurance Agency, LLC's Motion to Dismiss Third-Party Complaint* [Doc. No. 55]

(the "Motion") filed by third-party defendant Vanguard Title Insurance Agency, LLC

1

("Vanguard"). Vanguard asks this Court to dismiss Count I and Count II of *Defendant's Third-Party Complaint* [Doc. No. 17] (the "Third-Party Complaint") filed by defendant/third-party plaintiff Jason F. Childs ("Childs"). Childs's third-party claims against Vanguard are based on his assertion that Vanguard negligently failed to identify a mortgage on real property that Childs transferred to plaintiffs Brian Reaver, Jr. and Brian Richard Reaver (collectively, the "Reavers"). Vanguard argues that both Count I and Count II must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is made applicable in this adversary proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure.[1]

The Court concludes that dismissal of Count I and Count II of the Third-Party Complaint is warranted. Impleader of Childs's claims is improper under Civil Rule 14. Moreover, Count I and Count II fail to state a plausible claim upon which relief can be granted as required by Civil Rule 12(b)(6). Finally, Childs lacks the requisite standing to bring such claims. Accordingly, the Motion is granted.

## II. Factual Background

The parties' respective filings establish that, at all times relevant to this case, Childs was the sole member of Nottingham Homes, LLC ("Nottingham"). On

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. § 101 *et seq.* Specific chapters of the Bankruptcy Code are identified herein as "chapter __" and specific sections of the Bankruptcy Code are identified herein as "section __." Similarly, specific rules of the Federal Rules of Bankruptcy Procedure are identified herein as "Bankruptcy Rule __" and specific rules of the Federal Rules of Civil Procedure are identified herein as "Civil Rule __."

September 29, 2022, Nottingham acquired fee simple title to property located at 651 N. Cass Lake Rd., Waterford, Michigan (the "Property"). A year later, on September 27, 2023, Nottingham entered into an agreement to sell the Property to the Reavers for $207,000. Pursuant to their agreement, Nottingham provided the Reavers with a title insurance commitment (the "Commitment") from Vanguard.

The Commitment[2] was issued on September 22, 2023. The sole insured party identified on the Commitment is Brian Reaver. *See* Commitment, at p. 6. The Commitment contains the following language:

> **IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.
>
> THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL

---

[2] Although the Commitment was not attached to the Third-Party Complaint, it was repeatedly referenced therein. It was also attached as Exhibit 6 to the Motion. In reviewing a motion to dismiss, a court may consider the complaint along with any document not formally incorporated by reference or attached to the complaint as part of the pleadings if the "document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

3

LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

*See* Commitment, at p. 2 (emphasis in original).

The closing on the sale of the Property took place on October 26, 2023. At closing, Childs signed a *Warranty Deed* on behalf of Nottingham conveying fee simple title to the Reavers. Childs also signed an *Affidavit by Owner* on behalf of Nottingham disclaiming any knowledge of matters impacting title, including mortgages, beyond what was in the Commitment.

The Reavers allege that Childs knew of, and was party to, a mortgage held by Civic Financial Services, LLC dated September 16, 2022 (the "CFS Mortgage"). The Reavers further allege that they only became aware of the CFS Mortgage after receiving a foreclosure notice with respect to the Property. A foreclosure sale of the Property was held on March 19, 2024, and Banc of California successfully credit bid for the Property in the amount of $163,996.73. The Reavers subsequently redeemed the Property.

On June 11, 2024, the Reavers filed suit against Childs and Nottingham in the Oakland County Circuit Court [Case No. 2024-207929-CK] (the "State Court

Action"). The State Court Action alleged fraud, innocent misrepresentation and unjust enrichment claims against Childs related to the undisclosed CFS Mortgage. On December 19, 2024, the state court entered a *Default Judgment* (the "Judgment") against Childs and Nottingham in the amount of $189,158.33.

Childs commenced this bankruptcy case on January 29, 2025. Although originally filed as a chapter 13 case, the case was converted to a case under chapter 7 on February 25, 2025. On May 9, 2025, the Reavers commenced this adversary proceeding by filing a *Complaint For Nondischargeability of Debt* [Doc. No. 1] (the "Complaint") against Childs. The Complaint seeks a determination that the debt owed by Childs to the Reavers, as evidenced by the Judgment, is non-dischargeable pursuant to section 523(a)(2)(A) as a debt obtained by "false pretenses, a false representation, or actual fraud." Childs filed an *Answer to Complaint for Nondischargeablity of Debt Under 11 USC § 523(a)(2)(A) and Affirmative Defenses* [Doc. No. 8] on June 20, 2025.

On September 3, 2025, Childs filed the Third-Party Complaint asserting claims against Fidelity National Title Insurance Company ("Fidelity"), Vanguard, and Joshua Castmore ("Castmore"). More specifically, the Third-Party Complaint alleges: (i) a negligence claim against Fidelity and Vanguard (Count I), (ii) a

negligent performance of a contract claim against Vanguard (Count II), and (iii) a legal malpractice claim against Castmore (Count III).[3]

On December 10, 2025, Vanguard filed the Motion seeking dismissal of the claims alleged against it in the Third-Party Complaint. Childs filed a *Response to Third-Party Defendant Vanguard Title Insurance Agency LLC's Motion to Dismiss Third-Party Complaint and Brief in Support* [Doc. No. 56] on December 26, 2025. Vanguard filed a reply brief [Doc. No. 58] on December 29, 2025. The Court held a hearing on the Motion on February 23, 2026.

## III. Analysis

The Third-Party Complaint is premised on Civil Rule 14(a)(1), made applicable here by Bankruptcy Rule 7014. Under that rule, a defendant to any civil action in the federal courts may implead a party "who is or may be liable to it for all or part of the claim against" the defendant. Fed. R. Civ. P. 14(a)(1).

Permission to prosecute a third-party action is a matter committed to this Court's discretion. *See General Elec. Co. v. Irvin*, 274 F.2d 175, 178 (6th Cir. 1960); *see also* C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1443 (2025)

---

[3] The claims against Fidelity were dismissed pursuant to the *Order Granting Third-Party Defendant Fidelity National Title Insurance Company's Motion to Dismiss Third-Party Complaint* [Doc. No. 54] that was entered by the Court on December 10, 2025. The claims against Castmore were dismissed pursuant to the *Order Granting Joshua Castmore's Motion to Dismiss Third-Party Complaint* [Doc. No. 70] that was entered by the Court on February 24, 2026. This Opinion deals solely with the remaining claims in the Third-Party Complaint against Vanguard.

("whether a third-party defendant may be impleaded under Rule 14 continues to be a question addressed to the sound discretion of the trial court"). "The discretionary power of the court is not circumvented in cases wherein the third-party complaint may be served without leave of the court, pursuant to the provisions of Fed. R. Civ. P. 14(a)." *In re Chem. Separations Corp.,* 36 B.R. 138, 140 (Bankr. E.D. Tenn. 1983).

Vanguard seeks dismissal of Count I and Count II of the Third-Party Complaint under Civil Rule 12(b)(6). Civil Rule 12(b)(6) provides that a litigant may seek dismissal of a claim by motion for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion under Civil Rule 12(b)(6) tests the legal sufficiency of a claim. To survive a motion to dismiss under Civil Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).

For the reasons detailed below, dismissal of Count I and Count II of the Third-Party Complaint is appropriate.

7

### a. Impleader of Vanguard is improper under Civil Rule 14

As noted, Civil Rule 14, which governs third-party practice, allows a third-party complaint to be served upon "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The purpose of Civil Rule 14 is to "permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008).[4] Notwithstanding the foregoing, the Sixth Circuit cautioned that:

> Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the essential criterion of a third-party claim. Correlatively, a defendant's claim against a third-party defendant cannot simply be an independent or related claim, but must be based upon the original plaintiff's claim against the defendant.

*Id.* Third party claims are typically claims in the nature of contribution, indemnity, and subrogation. *See Farm Credit Services of Mid America PCA v. Swain (In re Swain)*, 2010 WL 2812727 (Bankr. N.D. Ohio July 15, 2010).

---

[4] Childs asserted at the hearing on the Motion that Civil Rule 14 is so broad that it can be used to implead any party associated with any of his defenses to the underlying non-dischargeability action. When the Court asked Childs's counsel for legal authority to support this position, he could not provide any.

Vanguard's primary argument with respect to Civil Rule 14 is that impleader is never appropriate in non-dischargeability actions like this because the sole issue in such cases is whether or not a debt owed by the debtor is non-dischargeable. In this case, the question is whether the Judgment is non-dischargeable under section 523(a)(2)(A) because the underlying debt was incurred through "false pretenses, a false representation, or actual fraud." *See* 11 U.S.C. § 523(a)(2)(A). That question, Vanguard posits, is simply a "yes or no" question. In other words, Vanguard argues, whatever claims Childs believes he has for a recovery against it has no bearing whatsoever with respect to the issue in this adversary proceeding; to wit, whether Childs's actions fall within the scope of section 523(a)(2)(A).

Vanguard is correct that several courts have stated that where a bankruptcy court "exercises its limited and specialized subject matter jurisdiction to hear and determine an objection to the dischargeability of a debt" under section 523(a), impleader is improper. *See, e.g.*, *Gulf Insurance Group v. Narumanchi (In re Narumanchi)*, 221 B.R. 311, 316 (Bankr. D. Conn. 1998). Such courts reason that the relief sought in non-dischargeability actions is typically declaratory in nature and does not determine liability or the amount owed. *See, e.g.*, *Boucher v. McCarter (In re McCarter)*, 289 B.R. 759, 763 (Bankr. D. N.M. 2002) ("When the adversary proceeding is limited to the issue of dischargeability, a third-party defendant could not be held liable to plaintiffs for a defendant's actions"); *Gulf Insurance Group v.*

9

*Narumanchi (In re Narumanchi)*, 221 B.R. 311, 315 n. 9 (Bankr. D. Conn. 1998);

("Indeed the Court questions whether an entity could ever be secondarily liable to a bankruptcy debtor in connection with a determination of the dischargeability of debt, given that pure dischargeability actions are declaratory in nature."); *Nextier Bank, N.A. v. Pompa (In re Pompa)*, 2013 WL 2286080 at *3–4 (Bankr. W.D. Pa. May 23, 2013) (third-party complaint was improper where adversary proceeding sought the "narrow and limited relief of a finding of nondischageability concerning the debt" owed by the debtor).

It is true that, in many non-dischargeability adversary proceedings, the only relief sought is declaratory relief. But that is not always the case. Indeed, in many dischargeability actions the Court is also asked to determine whether a debt is actually owed and, if so, how much.

In this case, however, the amount of the debt owed by Childs to the Reavers was already determined in the State Court Action. Pursuant to the Judgment, Childs indisputably owes the Reavers $189,158.33. The sole issue here, therefore, is whether such debt falls within the scope of section 523(a)(2)(A) such that it survives a discharge. In other words, this is one of those non-dischargeability adversary proceedings where the only relief sought is declaratory relief.

The Court agrees with the above-referenced opinions concluding that where, as here, the relief sought in an adversary proceeding is merely declaratory, then

impleader is improper. Certainly, Childs may seek to defend against Reaver's non-dischargeability claims by arguing, for example, that he did not commit fraud because he relied (rightly or wrongly) on the Commitment issued by Vanguard. But that common factual background does not warrant impleading Childs's affirmative claims for relief against Vanguard in this adversary proceeding, where only limited declaratory relief is sought against Childs.

In *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008), the Sixth Circuit Court of Appeals stated that "[t]hird-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim." For the reasons noted, Vanguard's liability to Childs, if any, is not dependent in any way on the sole issue in the non-dischargeability action. Accordingly, impleader of Vanguard pursuant to Civil Rule 14 is improper and Counts I and II of the Third-Party Complaint must be dismissed.[5]

### b. Childs fails to state a plausible claim upon which relief can be granted as required by Civil Rule 12(b)(6)

Counts I and II of the Third-Party Complaint must also be dismissed because Childs fails to state a plausible claim upon which relief can be granted, as required by Civil Rule 12(b)(6). In this case, the claims asserted by Childs against Vanguard

---

[5] Impleader under Civil Rule 14 is also improper because the plain language of that rule requires that Vanguard "is or may be liable" to Childs "for all or part of the claim against" him. As discussed in section III(b) of this Opinion, Vanguard simply is not liable to Childs under applicable non-bankruptcy law. Thus, this separate requirement of Civil Rule 14 likewise cannot be satisfied. *See Am. Zurich Ins. Co.*, 512 F.3d at 805.

in the Third-Party Complaint consist of a negligence claim (Count I) and a negligent performance of a contract claim (Count II).  Because such causes of action are not available to Childs under well-established Michigan law, Counts I and II must be dismissed pursuant to Civil Rule 12(b)(6).

### i.    Negligence

First, with respect to Childs's asserted negligence claim (Count I), the Michigan Supreme Court has held that, "[i]n order to make out a prima facie case of negligence, the plaintiff must prove the four elements of duty, breach of that duty, causation, and damages." *Brown v. Brown*, 478 Mich. 545, 552, 739 N.W.2d 313 (2007) (citing *Fultz v. Union–Commerce Assoc.,* 470 Mich. 460, 683 N.W.2d 587 (2004)).  In *Brown*, the Michigan Supreme Court explained:

> 'The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff.' 'Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.'

*Id.* at 317 (internal citations omitted).  "It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff." *Beaty v. Hertzberg & Golden, P.C.*, 456 Mich. 247, 262, 571 N.W.2d 716 (1997).

In the Third-Party Complaint, Childs alleges that Vanguard had a duty to "research the title history and present an accurate title commitment to both Plaintiffs

and Childs." *See* Third-Party Complaint, ¶ 41. However, as discussed below, Vanguard did not owe a duty of care to Childs that would support a negligence claim.

Michigan law is clear that title agencies who issue title commitments do not owe a professional duty of care sounding in tort to any party. Rather, their liability is contractual in nature only. *See, e.g.*, *Mickam v. Joseph Louis Palace Trust*, 849 F. Supp. 516, 521 (E.D. Mich. 1993) ("no Michigan court has held that a title insurer or agent has a professional duty of care to those who employ them, outside of their contractual obligations"). In *Mickam*, the United States District Court for the Eastern District of Michigan granted summary judgment in favor of a title insurer on a negligent misrepresentation claim because, it held, no duty to third parties was owed and, thus, no tort claim could exist. The court reasoned:

> In purchasing insurance, a buyer acquires a contractual right against the insurer for coverage of title defects.... To protect the rights and expectations of the parties, a title insurer should be liable in accordance with the terms of the title policy only and should not be liable in tort. To hold otherwise does violence to the whole concept of insurance.[6]

*Id.* at 521–22.

The Michigan Court of Appeals subsequently adopted *Mickam* in *Wormsbacher v. Seaver Title Co., Inc.*, 284 Mich. App. 1, 7 (2009). In *Wormsbacher*,

---

[6] Where a title abstract is obtained instead of a title commitment, the answer may be different. *See, e.g.*, *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974) (suggesting that the provider of a title abstract may be liable to others under a theory of negligent misrepresentation). In this case, however, there is no dispute that Vanguard committed to provide a policy of title insurance only and did not provide an abstract of title. Indeed, page 2 of the Commitment expressly states as follows: "THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE."

13

a purchaser of real property asserted negligence and negligent misrepresentation claims against an insurer whom it had hired to conduct title searches and to provide title commitments. The trial court granted the title insurer's motion for summary disposition relying on *Mickam*. The purchaser appealed, arguing that the trial court erred by granting summary disposition on the basis that Michigan does not recognize tort actions against a title insurer. In affirming the trial court's grant of summary judgment, the Michigan Court of Appeals likewise adopted the reasoning of *Mickam* and rejected out of state opinions that impose tort duties on title insurers.

Most recently, in *Shower Curtain Sols. Ltd., LLC v. First Am. Title Ins. Co.,* 2020 WL 3393467 (Mich. Ct. App. June 18, 2020), the Michigan Court of Appeals cited favorably to *Mickam* and *Wormsbacher* and held that "claims against a title insurer and its agents are governed by contract, not tort" and, thus, "a plaintiff may not sustain such a *tort* action against a title insurance agent…." *Id.* at *2 (emphasis in original). The court concluded by stating: "*Mickam* and *Wormsbacher* could not be clearer—an injured party must rely on its title insurance contract to bring suit against its title insurer or the insurer's agent; there can be no action in tort." *Id.*

In this case, this legal conclusion is buttressed by the language of the Commitment itself. The Commitment names Brian Reaver as the sole insured party. And it clearly and unambiguously states that:

> ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE
> COMPANY INVOLVING THE CONTENT OF THIS

14

COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

Commitment, at p. 2 (emphasis in original). The Commitment further provides that the title insurer's work was "PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE[S] NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED." *Id.* Finally, the Commitment expressly states:

> THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

*Id.*

Under Michigan law, the goal of contract interpretation "is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *AFSCME v. Detroit*, 267 Mich. App. 255, 261–62, 704 N.W.2d 712 (2005). The words of a contract "are interpreted according to their plain and ordinary meaning," and courts are directed to give "effect to every word, phrase, and clause." *Tuscany Grove Ass'n v. Peraino*, 311 Mich. App. 389, 393, 875 N.W. 2d 234 (2015). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Hastings Mut. Inc. Co. v. Safety King, Inc.*, 286 Mich. App. 287, 292, 778

N.W.2d 275 (2009). In this case, the contractual language is clear and unambiguous. Vanguard's liability under the Commitment is limited to its contractual liability to its insured; it owes no duties to third parties like Childs.

Although Vanguard may have contractual liability to its insured Brian Reaver, it has no liability under the Commitment to Childs (or anyone else for that matter) on a tort theory of negligence. Because Vanguard did not owe a duty to Childs under applicable state law, no negligence claim can exist. Thus, Count I of the Third-Party Complaint must be dismissed pursuant to Civil Rule 12(b)(6).

### ii.    Negligent Performance of a Contract

Count II of the Third-Party Complaint, asserting a claim of "negligent performance of a contract," likewise does not pass muster under Civil Rule 12(b)(6). That is because Michigan law, as interpreted by the Sixth Circuit Court of Appeals, does not allow for such a cause of action absent a separate and distinct duty being owed to the plaintiff.

In *Brock v. Consol. Biomedical Lab'ys*, 817 F.2d 24 (6th Cir. 1987), the plaintiff brought a cause of action against defendants for negligent performance of a contract. The United States District Court for the Eastern District of Michigan dismissed that claim pursuant to Civil Rule 12(b)(6). The Sixth Circuit Court of Appeals affirmed, holding that "Plaintiffs' claim in tort cannot exist under Michigan

law because plaintiffs do not claim that the defendant has caused any harm in the realm beyond the contract." *Id.* at 25. The court explained:

> The law in Michigan is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract. *Haas v. Montgomery Ward & Co.,* 812 F.2d 1015 (6th Cir. 1987); *Kewin v. Massachusetts Mutual Life Insurance Co.,* 409 Mich. 401, 295 N.W.2d 50 (1980); *Hart v. Ludwig,* 347 Mich. 559, 79 N.W.2d 895 (1957); *Brewster v. Martin Marietta Aluminum Sales, Inc.,* 145 Mich. App. 641, 378 N.W.2d 558 (1985). In *Hart,* Michigan's highest court noted the distinction between the legal duty which arises by operation of a contract and the fundamental concept of a legal duty to avoid conduct which creates liability in tort. "[I]f a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Hart,* 347 Mich. at 565, 79 N.W.2d at 898 (quoting W. Prosser, *Handbook of Torts,* § 33 at 205 (1st ed. 1941)).

*Id.*

The Sixth Circuit concluded its opinion in *Brock* by stating, "If plaintiffs' claim were allowed to prevail, it would confuse the characteristics of an action in tort with those of an action in contract and blur beyond recognition the boundary between actions in tort and contract. If every contract breach were treated as negligence or intentional tort, there would be no need for contract law." *Id.* at 26.

The upshot from the above-referenced case law is that Michigan law does not recognize a tort of negligent performance of a contract. *See, e.g.*, *Bailey Farms, Inc. v. NOR-AM Chemical Co.*, 27 F.3d 188, 191 (6th Cir. 1994) (citing *Brock* for the proposition that "Michigan law does not recognize a cause of action for negligent performance of a contract"); *Marco Intl., LLC v. Como-Coffee, LLC*, 2018 WL

17

1790171 at *3 (E.D. Mich. April 16, 2018) (same). Rather, an action in tort requires a breach of duty separate and distinct from a defendant's contractual obligations. "If no independent duty exists, no tort action based on contract will lie." *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 467, 683 N.W.2d 587 (2004).

At the hearing on the Motion, the Court asked Childs's counsel to provide any authority to support his assertion that Michigan law recognizes a negligent performance of a contract cause of action. The only authority that counsel provided was *Paige v. Klein Tools, Inc.*, 461 Mich. 703, 610 N.W.2d 900 (2000), asserting it stands for the proposition that "accompanying every contract is a common law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract." *Id.* at 720. The aforementioned quotation is not the holding of the Michigan Supreme Court in *Klein Tools*, rather it was contained in a restatement of the arguments of the plaintiff in that case. And, the referenced quotation comes from the dissenting opinion.

*Klein Tools* (which does not deal with a negligent performance of contract claim at all but, rather, considered and rejected a claim of educational malpractice) cannot be read to support Childs's negligent performance of a contract claim against Vanguard. Allowing Childs's negligent performance of a contract claim to proceed would be contrary to the above-referenced authority, which is binding on this Court, and would blur the lines between contract law and tort law. The harm alleged by

Childs here relates to the Commitment, a contract that Childs is not himself a party to. And, as discussed above, no separate and distinct duty was owed by Vanguard to Childs. In these circumstances, no tort claim exists under Michigan law. Accordingly, Count II of the Third-Party Complaint must be dismissed pursuant to Civil Rule 12(b)(6).

### c. Childs lacks the requisite standing to bring these pre-petition causes of action

Though not asserted by Vanguard, a third basis exists for dismissal of Childs' claims against Vanguard. For the reasons detailed in the Court's *Opinion on Third Party Defendant Joshua Castmore's Motion to Dismiss* [Doc. No. 69] (the "Castmore Opinion")[7] issued in this adversary proceeding, Childs does not have the ability to bring its pre-petition negligence and negligent performance of a contract claims against Vanguard under applicable bankruptcy law. Because such claims have not been abandoned under section 554, they are property of the bankruptcy estate and can only be pursued by the chapter 7 trustee appointed in this case.

The legal analysis in the Castmore Opinion, which is incorporated in its entirety herein, is equally applicable to Childs's asserted claims against Vanguard. In short, when a debtor files a bankruptcy petition, the bankruptcy estate becomes the owner of all the debtor's property as of the commencement of the case. *See* 11

---

[7] The Castmore Opinion can be found at *Childs v. Castmore (In re Reaver)*, 2026 WL 513372 (Bankr. E.D. Mich. Feb. 24, 2006).

U.S.C. § 541(a)(1) (property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case"). This includes all the debtor's potential causes of action that accrued prior to the debtor's bankruptcy petition. *See Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012).

Because Childs's alleged claims against Vanguard indisputably arose pre-petition, the causes of action belong to the bankruptcy estate and the debtor "has no standing to pursue such cause of action." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988). "Unless and until the Chapter 7 Trustee abandons these claims under 11 U.S.C. § 554, or the claims otherwise are no longer property of the bankruptcy estate, only the Chapter 7 Trustee has standing and authority to pursue" them. *Ukrainian Future Credit Union v. Garak* (*In re Garak*), 569 B.R. 684, 685 (Bankr. E.D. Mich. 2017) (citing *Auday*, 698 F.3d at 905).

No colorable argument can be made that Childs's alleged claims against Vanguard were abandoned under section 554, which identifies the sole procedures for abandoning a cause of action. There has been no request by the chapter 7 trustee under section 554(a) to abandon any property of the estate as being burdensome or of inconsequential value. Nor has any party in interest requested abandonment of the claims against Vanguard under section 554(b). Finally, because Childs's chapter 7 bankruptcy case has not been closed, no abandonment of the Vanguard claims has occurred under section 554(c).

Section 554(d) clarifies that, because the alleged claims against Vanguard have not been administered or abandoned "under this section," the claims remain property of the estate. *See* 11 U.S.C. § 554(d). Because the claims remain property of the estate, Childs does not have the ability to pursue them. He is not the real party in interest. *See Barefield v. Hanover Ins. Co.*, 521 B.R. 805, 808 (E.D. Mich. 2014). This constitutes a separate legal basis for granting the Motion and dismissing Counts I and II of the Third-Party Complaint.

## IV. Conclusion

For the reasons stated herein, the Court grants the Motion and will dismiss Counts I and II of the Third-Party Complaint. The Court will enter a separate order consistent with this Opinion.

**Signed on March 5, 2026**

/s/ Paul R. Hage
_____

**Paul R. Hage**
**United States Bankruptcy Judge**